IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

BEVERLY ENTERPRISES-MISSISSIPPI,
INC. d/b/a BEVERLY HEALTHCARE-
EASON                                                                                                PLAINTIFF

vs.                                                                                              No. 1:04CV276-D-D

BERTHA POWELL and JENNIFER PRUITT,
Wrongful Death Beneficiaries of Charles McAlister                         DEFENDANTS

OPINION DENYING PETITION TO COMPEL ARBITRATION

Presently before the court is the Plaintiff's petition seeking an order compelling arbitration pursuant to Section Four of the Federal Arbitration Act. Upon due consideration, the court finds that the Plaintiff's petition should be denied.

*A. Factual and Procedural Background*

On or about January 21, 2003, the Decedent Charles McAlister was admitted to the Plaintiff's nursing home facility in Tupelo, Mississippi. He was alone at the time of admission, after having been brought to the facility from the North Mississippi Medical Center. On the date of admission, the Decedent, who was indisputably illiterate, purportedly executed a document entitled "Resident and Facility Arbitration Agreement" (the Agreement). The Agreement contains a mandatory arbitration provision, requiring that all claims or disputes in connection with the Decedent's health care be submitted to binding arbitration. The Decedent remained at the facility until his death on May 8, 2003.

After the Decedent's death, the Defendants commenced a civil action in the Circuit Court of Lee County. Thereafter, the Plaintiff filed a petition in this court, pursuant to Section Four of the

Federal Arbitration Act, seeking an order compelling arbitration of the Defendants' claims.

### B.  *Standard for Compelling Arbitration*

Congress provided in the Federal Arbitration Act (FAA) that a written agreement to arbitrate, in a contract involving interstate commerce, "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  Section Four of the FAA specifically contemplates that parties, such as the Plaintiff, that are aggrieved by another party's failure to arbitrate under a written agreement may file an original petition in a United States District Court to compel that party to arbitrate their claims.  9 U.S.C. § 4.  In addition, the FAA expresses a strong national policy in favor of arbitration, and any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.  Southland Corp. v. Keating, 465 U.S. 1, 10, 105 S.Ct. 852, 857, 79 L. Ed. 2d 1 (1983); Mouton v. Metropolitan Life Ins. Co., 147 F.3d 453, 456 (5th Cir. 1998).

The Fifth Circuit has directed that courts are to perform a two-step inquiry to determine whether parties should be compelled to arbitrate a dispute.  OPE Int'l LP v. Chet Morrison Contractors, Inc., 258 F.3d 443, 445 (5th Cir. 2001).  First, the court must determine whether the parties agreed to arbitrate the dispute.  OPE Int'l, 258 F.3d at 445.  In conducting this inquiry, the court must determine whether a valid agreement to arbitrate exists, and whether the dispute in question falls within the scope of that arbitration agreement.  Id.; Pennzoil Exploration and Prod. Co. v. Ramco Energy Ltd., 139 F.3d 1061, 1065 (5th Cir. 1998).  If the court finds that the parties agreed to arbitrate the claims, it must then consider whether any federal statute or policy renders the claims nonarbitrable.  OPE Int'l, 258 F.3d at 446.  In conjunction with this inquiry, a party seeking to avoid arbitration must allege and prove that the arbitration provision itself was a product of fraud or

coercion; alternatively, that party can allege and prove that another ground exists at law or in equity that would allow the parties' contract or agreement to be revoked. Sam Reisfeld & Son Import Co. v. S.A. Eteco, 530 F.2d 679, 680-81 (5th Cir. 1976).

*C. Discussion*

1. The Agreement's Arbitration Provision

The parties do not dispute that the Agreement at issue contains the following mandatory arbitration provision:

> It is understood and agreed by Facility and Resident that any and all claims, disputes, and controversies (hereafter collectively referred to as a "claim" or collectively as "claims") arising out of, or in connection with, or relating in any way to the Admission Agreement or any service or health care provided by the Facility to the Resident shall be resolved exclusively by binding arbitration to be conducted at a place agreed upon by the Parties, or in the absence of such an agreement, at the Facility, in accordance with the National Arbitration Forum Code of Procedure, which is hereby incorporated into the Agreement, and not by a lawsuit or resort to court process. This agreement shall be governed by and interpreted under the Federal Arbitration Act, 9 U.S.C. Sections 1-16.

As for the first step in the court's analysis, the Defendants assert that the parties' arbitration provision is unenforceable because, *inter alia*, the Decedent did not sign the Agreement and agree to arbitration of any claims that might arise in the future.

2. Whether the Parties Agreed to Arbitration

It is well-established that illiteracy alone is not a sufficient basis for the invalidation of an arbitration agreement. American Heritage Life Ins. Co. v. Lang, 321 F.3d 533, 537 (5th Cir. 2003). In the case *sub judice*, however, it is not solely the Decedent's illiteracy that the Defendants claim renders the Agreement unenforceable, but rather the fact that the Decedent never signed the Agreement at all, thus not agreeing to arbitration.

Signing the subject Agreement was not a condition of admission into the facility, but rather was voluntary. Thus, the fact that the Decedent was admitted to the facility does not indicate that he signed the Agreement. While an "X" has been placed in the Signature line on the Agreement and the Decedent's name has been written on the line next to the X, the Plaintiff admits that one of its employees wrote the Decedent's name next to the X. In addition, one of the two employees who was in the room when the Decedent purportedly placed an X on the document admits that she cannot remember what documents the Decedent put his mark on that day, as there were several documents that he was asked to sign, and she cannot remember him putting his mark on the Arbitration Agreement. That employee also admits that she does not remember whether the Arbitration Agreement was read to the Decedent, even though he was indisputably illiterate and incapable of reading the document himself. For their part, the Defendants deny that the X on the document was made by the Decedent and have provided sworn testimony stating that it does not appear to be his mark.

Ordinary contract principles require a "meeting of the minds" between the parties in order for agreements to be valid. American Heritage, 321 F.3d at 538. The fact that there is conflicting testimony, from the Plaintiff's own witnesses (as well as from the Defendants), as to whether the Decedent was read the Agreement and whether he placed an X on it, indicates that he may not have consented to the terms of the Agreement and a meeting of the minds may not have existed. Id.; Volt Information Sciences v. Board of Trustees, 489 U.S. 468, 478-79, 109 S.Ct. 1248, 103 L. Ed. 2d 488 (1989) (holding that "the Federal Arbitration Act does not require parties to arbitrate when they have not agreed to do so" and "[a]rbitration under the [FAA] is a matter of consent, not coercion").

3. Fraud in the Inducement

Ordinary contract principles prohibit parties from engaging in fraud to induce other parties to sign agreements. American Heritage, 321 F.3d at 538. Under Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 403-04, 87 S.Ct. 1801, 1805-06, 18 L. Ed. 2d 1270 (1967), and its progeny, the central issue in a case such as this one is whether the alleged fraudulent inducement relates to the making of the arbitration agreement itself or to the contract as a whole. R.M. Perez & Assoc., Inc. v. Welch, 960 F.2d 534, 538 (5th Cir. 1992); Bhatia v. Johnston, 818 F.2d 418, 421 (5th Cir. 1987). If the claim is fraud in the inducement of the arbitration clause itself, federal courts may decline to send the matter to arbitration; but if the claim is fraud in the inducement of the contract generally, then the issue should be sent to arbitration for the arbitrator to determine that issue. Prima Paint, 388 U.S. at 403-04; Bhatia, 818 F.2d at 421 (holding that if claim of fraud focuses specifically on arbitration agreement, as opposed to entire contract parties entered into, then federal courts may consider it and not send dispute to arbitration). Here, the Defendants' claim of fraud in the inducement focuses solely on the Arbitration Agreement; no other aspect of the Plaintiff's relationship to the Decedent is mentioned or challenged. Thus, the court may consider the Defendants' argument and decline to send the matter to arbitration.

The court finds that even if the Decedent did place his mark on the Agreement, the Plaintiff's employees' alleged failure to inform the Decedent that he was signing an arbitration agreement, as one of the Plaintiff's employees stated in her deposition testimony is something that may have occurred, may be regarded as fraud in the inducement if the employees misrepresented the facts, acted in less than good faith, or had notice of the Decedent's illiteracy. Id. The Plaintiff does not deny that its employees were aware of the Decedent's illiteracy. Therefore, their alleged failure to

identify and explain the Agreement to the Decedent may constitute fraud in the inducement, a sufficient ground for denying the Plaintiff's petition to compel arbitration. Id.

### D. Conclusion

In the case *sub judice*, there is sufficient evidence to indicate that the Agreement may not have been valid under ordinary contract principles. In particular, the Decedent may not have agreed to the Agreement. This is evidenced by the testimony of the Plaintiff's own employee, who testified that the Agreement may not have been explained to the Decedent and that he may in fact not have placed his mark on it. Further, even if the subject mark was made by the Plaintiff, there is sworn testimony from the Plaintiff's employee that the Agreement may not have been explained to the Decedent, which may constitute fraud in the inducement due to the Decedent's illiteracy (because he could not consent to arbitration absent an adequate explanation of the Agreement's arbitration provision) and permit this court to deny the Plaintiff's petition to compel arbitration.

Accordingly, the court finds that the parties have not agreed to arbitrate the Defendants' pending state court claims; thus, the Plaintiff's petition to compel arbitration shall be denied and this case closed.

A separate order in accordance with this opinion shall issue this day.

This the 16th day of February 2006.

/s/ Glen H. Davidson
Chief Judge